1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| BEGOIA MORGANDE,                                       )<br>                                                       )<br>                          Petitioner,                  )<br>v.                                                     )<br>                                                       )<br>JAMES E. TILTON, Secretary of California               )<br>Department of Corrections and Rehabilitation,          )<br>et al.,                                                )<br>                                                       )<br>                          Respondents.                 )<br>_____                ) | Case No.  2:07-CV-1824-MMS<br><br>ORDER DENYING PETITION FOR A<br>WRIT OF HABEAS CORPUS |

Begoia Morgande, a California state prisoner, petitions for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  A jury convicted Morgande of first degree murder, for which he received a sentence of 50 years to life in state prison. His habeas petition challenges his state conviction on six grounds: (1) the trial court's denial of his motion to dismiss filed pursuant to California Penal Code § 1387.1; (2) admission at trial of statements that were made after Morgande requested an attorney during his interrogation; (3) admission of his wife Shelisa Nichols's statements; (4) prosecutorial misconduct; (5) admission of evidence of a similar offense without a limiting instruction; and (6) ineffective assistance of trial counsel.  For the reasons discussed below, the petition is DENIED.

# FACTUAL BACKGROUND

The facts are taken substantially from the unpublished opinion of the California Court of Appeal, First Appellate District.  See People v. Morgande, 2006 WL 1454792 (Cal. Ct. App. May 26, 2006).  This court presumes state court findings of fact to be correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Marvin Sims lived in Vacaville, California with several people, including Morgande, Morgande's future wife Shelisa Nichols (referred to as Nichols for clarity because during the relevant time period her last name was the same as petitioner's), and Diona Woods.  At the time, Sims was a drug dealer, Morgande was a pimp, and Nichols and Woods were Morgande's prostitutes and lovers.

Sims was last seen alive on January 20, 1998.  On March 23, 1998, a male body was found floating near a pier along Highway 37 in Solano County, California.  The man had been choked to death, and his body was wrapped with a metal chain and weighted down with a 50-pound barbell plate.  A large wad of paper was stuffed in the back of the man's throat.  According to a pathologist, the man died by asphyxiation, probably from choking on the wadded paper, but the possibility of manual strangulation could not be ruled out.  There were no signs of intoxication, and no signs of a beating, aside from one laceration on the forehead that could have occurred after death.  The body was not identifiable because it had been in the water for several weeks to several months.  DNA from the body was retained for future identification.

Sometime in 2000 or 2001, Woods confided in a friend, Felicia Gill.  At the time, the murder was still unsolved.  Gill testified that Woods told her that Morgande killed Sims.  Woods said the murder occurred in a vehicle, that her daughter was in the backseat when Sims was killed, and that Sims's body "was in

some water somewhere."

In April 2002, Gill relayed Woods's story to the police.  The police collected DNA samples from Sims's mother and son and compared them to the DNA retained from the body recovered from the water in 1998.  In October 2002, the police identified the body as Marvin Sims.

On November 12, 2002, the police interviewed Woods.  She implicated herself, Morgande, and Nichols in the murder of Sims.  Woods's police statement and trial testimony were consistent in their essential elements.  Woods testified that she, Morgande, and Sims knew each other from San Diego, California and that the motivation for Sims's murder arose there.  In San Diego, Morgande had struck Dorothy Whitney with a gun when she refused to prostitute for him in August 1997.  As a result, the police arrested Morgande.  While a prosecution for the offense was pending, Morgande, Woods, and Sims moved to Vacaville, California, where they lived together in early 1998.  According to Woods, Morgande wanted Sims "to persuade" Whitney not to testify against Morgande in the San Diego prosecution.

Other witnesses corroborated Woods's story.  Whitney testified that Sims approached her in January 1998, pulled out a gun, grabbed her arm, told her to come with him, and pulled her down the driveway of her house.  Whitney escaped when her father lunged at Sims.  Woods testified that Morgande was very angry with Sims for his failure to stop Whitney from testifying.

Morgande told Woods that he was going to kill Sims.  In late January or early February 1998, Morgande, Woods, and Sims went to a motel in Oakland, California.  The three would often go to motels together, where Sims would sell drugs, and Woods would engage in prostitution.  Sims "assumed it was just the same thing as usual," and did not know that Morgande was planning to kill him.

While at the motel, Morgande or Woods telephoned Nichols and asked her to bring weights.  Apparently, Morgande owned weights for weightlifting, and to chain on to his pit bulls to build the dogs' muscles.

When Nichols arrived, a chain and weights were put into Woods's car, and everyone went for a drive.  Woods drove, and Nichols was in the passenger seat holding Woods's baby daughter in a car seat.  Morgande and Sims were in the backseat.  Morgande instructed Woods where to drive.

Woods' testimony went on to describe the killing.  It was dark and late, and Morgande and Sims had both been drinking heavily.  Woods looked in her rearview mirror as she drove and could "somewhat" see what was happening in the backseat.  There was "a lot of struggling and arguing" in the backseat.  Morgande punched Sims.  Woods saw Morgande put Sims in a headlock and choke him, and she heard him say, "This nigger won't die."  Woods soon knew Sims was dead when she smelled excrement.

Woods kept driving.  She stopped along Highway 37 at a fishing spot with a pier.  Woods had been to the fishing spot before, while she lived with Morgande and Nichols.  Morgande removed Sims's body from the car, chained the body with a dog chain, and attached a round, 50-pound barbell weight plate to the chain.  Morgande told Woods and Nichols to help him lift Sims's body because the body was too heavy to lift by himself.  The women helped Morgande lift the body and dump it over the railing into the water.

On November 14, 2002, Morgande and Nichols, now Morgande's wife, were brought into the police station for questioning.  Morgande's interview was videotaped and transcribed, but his statements were relayed to the jury through the testimony of police officers.  At the start of the interview, Detective Joseph McElligott informed Morgande that he was under arrest for the murder of Marvin

4

1  Sims, and read him his <u>Miranda</u> rights.  Morgande said that he understood his

2  rights, and asked about the evidence against him.  Morgande admitted that he lived

3  with Sims, Woods, and Nichols in 1997, and said that Sims went missing after

4  stealing jewelry from Nichols.  The police told Morgande that Sims was dead, and

5  that they had evidence linking Morgande to Sims's death.  Morgande was skeptical

6  and asked for proof.  Detective McElligott said they had DNA evidence, and proof

7  that Morgande had an altercation with Sims.

8          Morgande denied any wrongdoing.  As to the officer's insistence that they

9  had evidence implicating Morgande, Morgande said, "You got a bunch of

10  hearsay."  Detective McElligott said they had more than that, and Morgande asked

11  for details.  The back-and-forth between the police and Morgande continued.

12  Morgande, 33 years old at the time, remarked that he had "been through the court

13  system since I was 13" and "been around the best of the best in prison" and knew

14  that he would not have been released from prison on his last sentence if there was

15  evidence linking him with Sims's body.  The police urged Morgande to tell them

16  what happened.

17          Morgande asked if his wife, Nichols, could pick up his keys and wallet from

18  the police station.  The police told Morgande that Nichols was also being

19  questioned at the station.  When Morgande asked why Nichols was arrested,

20  Sergeant Weaver said that Nichols was involved in Sims's murder, and that there

21  may be some liability for her but that she was cooperating with the police.  Then

22  Morgande, for the first time, asked to speak with his wife.  Morgande asked if it

23  was possible to tell Nichols that he loved her.  Sergeant Weaver assured Morgande

24  he would "try to make that happen."  Sergeant Weaver then left the room.

25          At this juncture, after speaking with the police for about two hours,

26  Morgande asked for a lawyer.  Morgande said that there was no reason to speak

27

28                                       5

1  with the police if they had the evidence they said they had against him.  Detective

2  McElligott asked if Morgande wanted a lawyer.  Morgande said, "Hell, yeah, I

3  want a lawyer," and then spoke on extensively, summarizing the evidence that

4  police claimed they had against him and denying that the police possessed any

5  evidence.  Morgande said that the police only had "some-hearsay-assed-shit," and

6  demanded to see evidence that his fingerprints were at the crime scene.

7      Detective Lydon entered the room at this time.  He told Morgande that the

8  police could not speak with him or present him with anything that would elicit a

9  response from Morgande because of his request for an attorney.  He also said that

10  Morgande, on his own accord, could re-initiate conversation with the police and

11  waive his right to an attorney.

12      Morgande replied, "Man, if you let me – if you let me – if you let me tell my

13  wife, Man that I love her Man, and she gonna be all right and this and that Man,

14  I'll waive what I just said, Man."  Morgande told Detective Lydon that Sergeant

15  "Weaver already said it could happen."  Detective Lydon said, "We can make that

16  happen.  We can make that, I'm pretty confident, but the thing about it is, another

17  investigator's talking to her right now and I don't want to interrupt that right this

18  minute.  But we'll make that happen for you, Ray."  The police told Morgande to

19  "collect" his thoughts and decide if he wanted to reinitiate contact with the police.

20  Detective Lydon said he would try to arrange a visit between Morgande and his

21  wife, but it was "not a 'deal'" for Morgande's waiver of counsel.  As to the visit,

22  Detective Lydon said, "I'll make it happen, but it's not a 'deal' for – you have to

23  make your decision."  Morgande replied: "No, it ain't a deal.  It ain't a deal.  I'm

24  not gonna go tell my lawyer, 'Yeah, I had to waive you because they let me see my

25  wife.'"

26      According to officers, Morgande then waited alone in the interview room for

27

1   approximately 20 minutes, and then in a holding cell for approximately 45 minutes

2   in order to see his wife.  Morgande grew impatient.  He accused the police of

3   playing games and threatened to stop speaking with the police.  The police told

4   Morgande that he would soon be able to speak with his wife.

5        Detective Lydon went to check on Morgande.  Morgande requested a

6   sweatshirt, coffee, and a cigarette.  Detective Lydon brought the items for him.

7   Detective Lydon then took Morgande outside to smoke.  This encounter was not

8   videotaped or transcribed, but was testified to by Detective Lydon at the hearing on

9   the motion to suppress Morgande's police statement.  According to Detective

10  Lydon, Morgande said he was not against talking to the police, but he wanted to

11  talk to his wife first.  Detective Lydon testified: "I again reiterated that it was not a

12  deal.  We could possibly have him talk to his wife.  And he said, 'Hey, I am not

13  opposed to talking to you guys.'"  The record thus does not reflect that any

14  interrogation occurred after Morgande requested an attorney and before he met

15  with his wife.

16       Morgande met with his wife after the cigarette break, and then returned to

17  the interview room, where his conversation was taped.  Detective Lydon confirmed

18  that before the taping began, Morgande had said during the cigarette break he

19  would speak with police.  Morgande said he understood his rights.  The

20  interrogation continued.  Detective Lydon told Morgande that Woods and Nichols

21  both said Morgande killed Sims.  Morgande said that he did not believe that his

22  wife "would make up a story like that."  The detective asked if Morgande would

23  tell the truth if the detective could prove what Nichols told the police.  Morgande

24  said he would.  The police then allowed Morgande to watch a portion of Nichols's

25  interview in which Nichols said that Morgande killed Sims and revealed

26  information about the crime.  Morgande concurred in certain statements made by

27

28                                7

Nichols.  He later asked to be jointly interviewed with Nichols, but the police refused.  Detective Lydon reminded Morgande that he made a promise, and said, "I want you to tell me the truth."

Shortly thereafter, Morgande gave a confession.  He told police that he had been on drugs and alcohol at the time and so could not recall the details of the event.  Morgande said he did not know if he killed Sims, and said that he was "facing a death sentence" because he would never get out of prison.  A detective remarked that Sims got a death sentence and asked Morgande what should happen to the person who killed Sims.  Morgande replied, "[J]ustice should be done." When asked what justice was due to him, Morgande said that he "deserved a death sentence" if "it went down the way you guys are saying my wife said it went down."  When asked what he remembered, Morgande said that he remembered being "in the Bay Area" in a motel room with Sims, Woods, and Nichols, being in Woods's car, and driving around.  The interrogation ended.

On November 15, 2002, Woods was arrested and charged with murder. Woods's car was searched, but nothing of evidentiary value was recovered.  The police also searched Morgande's home and storage unit.  They found barbell plates, photographs of "pit-bull-type dogs," and fishing equipment.  The prosecution agreed to reduce Woods's charge to manslaughter if she testified against Morgande.

Woods first testified at a preliminary hearing in June 2003, but recanted her police statement, and denied that Morgande killed Sims.  The prosecution rescinded the plea agreement and charged Woods with murder and perjury.  Woods admitted that she lied at the preliminary hearing because Morgande urged her, through jailhouse communications, to come up with a different story.  The prosecution entered into a new plea bargain with Woods in which she pleaded

8

1　guilty to manslaughter and perjury in exchange for her truthful testimony at

2　Morgande's trial.  Woods's subsequent trial testimony implicated Morgande in

3　Sims's murder, consistent with her original police statement.

## PROCEDURAL BACKGROUND

5　　　On November 18, 2002, Morgande and Nichols were first charged by

6　complaint with Sims's murder.  After the preliminary hearing, when Woods

7　recanted her original police statements, and after several unsuccessful attempts to

8　locate Gill, a key prosecution witness who could corroborate Woods's trial

9　testimony with evidence of Woods's prior consistent statements, the prosecutor

10　dismissed the case on November 7, 2003, and announced that he would refile.

11　　　On November 10, 2003, the prosecution filed a new complaint against

12　Morgande and Nichols.  The defense moved to compel discovery and complained

13　that the prosecution had not produced DNA testing documents relating to the

14　identification of the victim and analysis of physical evidence.  The court

15　sanctioned the prosecution by excluding DNA evidence at trial.  The prosecution

16　dismissed the case on January 30, 2004 for refiling because they were unable to

17　locate two significant witnesses.

18　　　The prosecution filed its final complaint against Morgande on February 2,

19　2004, again charging him with murder.  The jury trial was conducted shortly

20　thereafter, from July 8 to July 22, 2004.  On July 22, 2004, the jury found

21　Morgande guilty of first degree murder.  Because Morgande had a prior strike

22　under California's Three Strikes Law, he received a sentence of 50 years to life in

23　state prison.

24　　　Morgande appealed his conviction to the California Court of Appeal, and,

25　while the appeal was still pending, filed a state habeas petition.  On May 26, 2006,

26　the California Court of Appeal, First Appellate District, affirmed the judgment in

27

28　　　　　　　　　　　　　　9

1   an unpublished opinion, and denied Morgande's state habeas petition.  Morgande

2   petitioned for review of both his direct appeal and his state habeas petition in the

3   California Supreme Court.  The California Supreme Court denied both petitions on

4   September 13, 2006.

5      On September 5, 2007, Morgande filed the pro se petition for habeas corpus

6   that is now before this court.

7                              **STANDARD OF REVIEW**

8      The writ of habeas corpus is available to "a person in custody pursuant to a

9   judgment of a State court only on the ground that he is in custody in violation of

10   the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  As

11   dictated by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a

12   district court's standard of review is described as follows:

13      An application for a writ of habeas corpus on behalf of a person in
        custody pursuant to the judgment of a State court shall not be granted
14      with respect to any claim that was adjudicated on the merits in State
        court proceedings unless the adjudication of the claim–

15
16         (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
           determined by the Supreme Court of the United States; or
17

18         (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in
19         the State court proceeding.

20   28 U.S.C. § 2254(d).

21      Pursuant to 28 U.S.C. § 2254(b)(1), however, before a federal court may

22   consider a state prisoner's application for a writ of habeas corpus, the prisoner

23   must have exhausted available state-court remedies.  <u>Coleman v. Thompson</u>, 501

24   U.S. 722, 731 (1991).  To properly exhaust state remedies, the prisoner must have

25   afforded the state courts an opportunity to rule upon and correct the merits of his

26   federal constitutional claims by fairly presenting the claims in each appropriate

27

28                                      **10**

1   state court in a procedurally appropriate manner.  Baldwin v. Reese, 541 U.S. 27,

2   29 (2004).  "[W]here the [federal] claim has been presented for the first and only

3   time in a procedural context in which its merits will not be considered unless there

4   are special and important reasons . . . [r]aising the claim in such a fashion does not

5   . . . constitute fair presentation."  Castille v. Peoples, 489 U.S. 346, 351 (1989).

6                                          **DISCUSSION**

7   **I.     Trial court's denial of Morgande's motion to dismiss.**

8          California Penal Code § 1387.1 bars the successive filing of charges if the

9   prosecutor's conduct has been in bad faith.  Morgande alleges that his federal due

10  process rights were violated when the trial court denied his third motion to dismiss.

11  In relevant part, section 1387.1 provides,

12        Where an offense is a violent felony, . . . and the prosecution has had two
          prior dismissals . . . the people shall be permitted one additional
13        opportunity to refile charges where either of the prior dismissals under
          Section 1387 were due solely to excusable neglect.  In no case shall the
14        additional refiling of charges provided under this section be permitted
          where the conduct of the prosecution amounted to bad faith.

15         Morgande argues that the denial of his third motion to dismiss violated his

16  federal due process rights because the deprivation was an arbitrary denial of a state

17  law benefit, and that the trial court's refusal to permit him to call witnesses during the

18  hearing on the motion to dismiss violated his federal rights.  Morgande's claim does

19  not entitle him to federal habeas relief.

20         In the first place, Morgande failed to exhaust this claim before the state

21  court.  Morgande did not present this claim before the trial court or in the

22  California Court of Appeal.  The sole reference to the federal claim Morgande

23  currently raises was first presented in a footnote in his petition to the California

24  Supreme Court, and provided that "the lower court's denial of appellant's motion

25  to dismiss under Penal Code section 1387.1 as described in appellant's first seven

26  arguments herein was the arbitrary denial of a state law benefit which violates

27

28                                            11

1    federal due process."  This generic and buried assertion of a due process violation

2    does not constitute a fair presentation of the substance of the claim to the state

3    court for purposes of exhaustion.  Gray v. Netherland, 518 U.S. 152, 163 (1996)

4    ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad

5    as due process to present the 'substance' of such a claim to a state court.").

6    Moreover, Morgande's federal due process argument was not raised at all to the

7    California Court of Appeal, and therefore, not appropriately raised before the

8    California Supreme Court, because that court "normally will not consider an issue

9    that the petitioner failed to timely raise in the Court of Appeal."  Cal. Rules of

10   Court, rule 8.500(c)(1).  Accordingly, the fleeting reference in the California

11   Supreme Court petition was insufficient to exhaust state court remedies.  See

12   Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) ("[P]resentation of an issue

13   in a petition to the Oregon Supreme Court was inadequate because the court's

14   policies militated against reviewing the issue.") (citing Kellotat v. Cupp, 719 F.2d

15   1027, 1031 (9th Cir. 1983)).  Morgande's claim must be rejected for his failure to

16   exhaust the claim.

17       Even if Morgande had exhausted the claim in state court, however, his

18   challenge would fail on the merits.  Morgande's challenge is based exclusively on

19   an alleged violation of state statutory rights, specifically, rights and procedures

20   afforded pursuant to California Penal Code § 1387.1.  A writ of habeas corpus may

21   be granted under § 2254 "only on the basis of some transgression of federal law

22   binding on the state courts."  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.

23   1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  It is not available as a

24   remedy for violations of state law or for alleged errors in the interpretation or

25   application of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  The

26   California Court of Appeal considered the prosecutor's motive for the dismissals in

27

28                                          12

1  Morgande's case.  After examining the record, the California Court of Appeal

2  concluded that the prosecutor's inability to proceed to trial was due to "excusable

3  neglect" and not done in "bad faith," within the meaning of section 1387.1.  The

4  court further found that it was uncertain whether section 1387.1 affords a

5  defendant a right to confront and cross-examine witnesses, but that Morgande

6  failed clearly to invoke any such claimed right.  A federal habeas court does not

7  reexamine state-court determinations on state-law questions.  Estelle, 502 U.S. at

8  67-68.  The state court's determination was thus not contrary to or an unreasonable

9  application of clearly established Federal law, and did not result from an

10  unreasonable determination of the facts.  Accordingly, this claim is denied.

11  **II.    Admission of Morgande's statements made during police**
        **interview after request for an attorney.**

12  Morgande alleges that the trial court's admission of the statements he made

13  after his request for an attorney during his interrogation violated his constitutional

14  rights.  The state trial court denied his motion to suppress, finding that although

15  there was an invocation of the right to an attorney during the interview, no

16  promises were made to Morgande, and that he later made a knowing and intelligent

17  waiver of his right to counsel.  The California Court of Appeal also rejected his

18  claim of a constitutional violation.  It found that although Morgande properly

19  invoked his right to counsel, he subsequently initiated conversation with the police

20  and voluntarily and knowingly waived that right.  The record reflects that no

21  interrogation occurred after the request for counsel and before the waiver, so the

22  court's reading of the record was not unreasonable.

23  A suspect's unequivocal invocation of a request for counsel requires police

24  officers to cease all questioning and permit the suspect to consult with an attorney.

25  Davis v. United States, 512 U.S. 452, 458 (1994).  This rule does not apply,

26  however, where a suspect "initiates further communication, exchanges, or

27

28                                        **13**

1    conversations with the police." <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981).

2    A suspect initiates further communication only where he "evince[s] a willingness

3    and a desire for a generalized discussion about the investigation." <u>Oregon v.</u>

4    <u>Bradshaw</u>, 462 U.S. 1039, 1045-46 (1983).  If the police reinitiate interrogation of

5    the suspect, the prosecution must demonstrate under the totality of the

6    circumstances that the suspect knowingly and intelligently waived his previously

7    invoked rights.  <u>See</u> <u>Edwards</u>, 451 U.S. at 486 n.9.

8         The California Court of Appeal determined that Morgande reinitiated

9    communication with the police.  This determination was not contrary to or an

10   unreasonable application of Supreme Court precedent, nor was it an unreasonable

11   determination of the facts.  An interrogation or its functional equivalent occurs

12   where the officer's conduct is "reasonably likely to elicit [an inculpatory or

13   exculpatory] response." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 & n.5 (1980).

14   The California Court of Appeal observed that Morgande did not simply invoke his

15   right to counsel and remain silent.  Rather, Morgande continued to ask the police

16   officers to present the evidence that they had against him.  In response, the officers

17   explained to Morgande that his invocation of the right to counsel precluded them

18   from showing him evidence that might evoke a response, and that only if

19   Morgande reinitiated the conversation could they meet his demand for proof.  As

20   the California Court of Appeal put it, "the police acted reasonably in replying to

21   that demand by explaining to [Morgande] that his invocation of the right to counsel

22   precluded them from showing him evidence that might provoke a response from

23   him."  The officer's conduct in explaining Morgande his rights, prompted by his

24   own monologue, did not constitute an interrogation that was "reasonably likely to

25   elicit [an inculpatory or exculpatory] response." <u>Innis</u>, 446 U.S. at 301.

26        Morgande then reinitiated the communication with officers.  He said that he

27

28                                           14

would waive his right to counsel if the officers let him speak to his wife.  The

police had told him, however, that they were working on Morgande's request to

see his wife even before he invoked his right to counsel.  The police left Morgande

for approximately one hour so that he could "collect" his thoughts and decide if he

wanted to reinitiate contact.  Detective Lydon testified that when he took

Morgande outside for a cigarette break, Morgande initiated a conversation about

the investigation.  There is no evidence to the contrary.  The transcript of the

interview with Morgande contains Morgande's confirmation that he wanted to

continue his conversation with the police, and that he waived his right to counsel.

The state court did not unreasonably find that Morgande reinitiated communication

with the officers.

      The record also supports the state court's finding that Morgande's decision

to renew his conversation with the police was knowing and intelligent.  Looking to

the totality of the circumstances, the state court found that Morgande, who was 33

years old at the time, had extensive experience with the criminal justice system and

was familiar with the concepts of hearsay, constitutional rights, court procedures,

and investigative techniques.  The court even pointed out Morgande's successful

attempts to extract information from the police and to evade their efforts to pin him

down.  Moreover, the state court appropriately rejected Morgande's claim that the

police conditioned a spousal visit on Morgande's waiver of counsel.  The police

had said they would try to grant Morgande's request for a spousal visit even before

Morgande invoked his right to counsel.  The state court's determination that, under

the totality of the circumstances, Morgande's waiver was knowing and intelligent

was not an unreasonable application of clearly established Supreme Court

precedent, nor an unreasonable determination of the facts in light of the record.

      Accordingly, Morgande's claim is rejected.

**15**

### III.    Admission of Nichols's statements during trial.

The defense called Detective Lydon as a witness in an apparent effort to show that Morgande's admissions of guilt were made out of spousal loyalty.  There were two instances during the detective's testimony in which he described telling Morgande what his wife, Nichols, had said while she was being interrogated and then indicated that Morgande had agreed or acknowledged the truth of what Nichols had said.  Morgande now claims, as he did in his direct appeal, that his Confrontation Clause rights were violated by this evidence because he could not cross-examine Nichols.

In the first instance, Detective Lydon testified that he told Morgande that Nichols had said Morgande beat Sims, and that Morgande, upon being told that Nichols said this, responded that he did not remember the incident because he was under the influence of drugs and alcohol, but that he would have to "ride with my wife."

In the second instance, Detective Lydon testified, this time on cross-examination by the prosecutor, that he told Morgande that Nichols had told the police that Morgande had been in a fight with Sims, and that Nichols came down to pick up Morgande, Sims and Woods in a Camaro.  In response, according to Lydon, Morgande had asked, "The–my white one?"

The state Court of Appeal found that these two instances constituted adoptive admissions by Morgande that did not violate Morgande's right to confront witnesses.  The state court's determination was not contrary to or an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

U.S. Const. amend. VI.  Only "testimonial statements" cause a declarant to be a "witness against" an accused, thus triggering the protections of the Confrontation Clause.  Davis v. Washington, 547 U.S. 813, 821 (2006) (citing Crawford v. Washington, 541 U.S. 36, 51 (2004)).  The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Crawford, 541 U.S. at 59 n.9.

The state court's determination that the statements were adoptive admissions by Morgande and therefore did not violate his Confrontation Clause rights was not contrary to or an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts.  The content of Nichols's statements was not conveyed to the jury except in the two above-cited instances.  In both instances, the statements conveyed by the witness-detective about what Nichols said were admitted for the jury's consideration of Morgande's response to the statement as an adoptive admission.  Because Morgande "adopted" Nichols's statements, the statements, in effect, became his own admissions.  Therefore, Morgande had no constitutional right to confront Nichols because an accused only has a right to cross-examine "witnesses against him."  U.S. Const. amend. VI; accord United States v. Allen, 10 F.3d 405, 413 (7th Cir. 1993) ("The 'witness' against the defendant is the defendant himself, not the actual declarant; there is no violation of the defendant's right to confront the declarant because the defendant only has the right to confront 'the witnesses against him.'").  Accordingly, this claim is denied.

## IV.   Prosecutorial misconduct.

Morgande claims that he is entitled to federal habeas relief on the basis of alleged prosecutorial misconduct because the prosecutor (1) made improper comments to the jury; (2) vouched for a witness; (3) coerced testimony from Woods; and (4) did not properly disclose Woods's plea agreement to the jury.

1    Morgande's claims do not warrant habeas relief.

2              **1.      Allegedly improper comments to the jury.**

3         Morgande alleges that the prosecutor engaged in improper argument

4    numerous times throughout Morgande's case.  No objection was made in the trial

5    court to several of the allegedly improper arguments.  To the extent that no

6    objection was registered before the trial court, and the California Court of Appeal

7    found that the claim was forfeited on this basis, Morgande's claims are

8    procedurally barred.

9         Nonetheless, even considering the merits of the claims, they do not provide a

10   basis for habeas relief.  Of the instances of misconduct cited by Morgande, the

11   California Court of Appeal found that the prosecutor engaged in misconduct in

12   only two instances.  In the first instance, the prosecutor improperly commented on

13   Nichols's failure to testify.  During closing argument, the prosecutor noted that

14   Woods said Nichols was equally involved in the murder.  The prosecutor

15   continued, "Where is Nichols?  If [Morgande] wants a witness to help if she could

16   help him, why not bring her in here?"  Defense counsel objected, and the court

17   admonished the jury to "disregard the last argument about Shelisa's [Nichols] lack

18   of testifying."

19        The second instance occurred immediately after this admonition.  The

20   prosecutor said, "You know, there are other players in this case, one of who[m] is

21   Shelisa Morgande [Nichols].  We can't speculate on why she's not in a joint trial

22   here.  That's inappropriate.  The Judge gave you an instruction, you are not to

23   worry about what, if anything, is going to happen to her.  You just have to deal

24   with the defendant's case.  And in this defendant's case, it's very, very clear, very

25   clear that she would be of no help."  While this arguably relied on facts outside the

26   record, defense counsel made no objection, so the Court of Appeal ruled that the

27

28                                    **18**

1    claim was waived.

2        A prosecutor's misleading and inflammatory arguments may violate a

3    defendant's due process right to a fair trial.  Darden v. Wainwright, 477 U.S. 168,

4    181-82 (1986).  For purposes of due process, however, the touchstone "is the

5    fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455

6    U.S. 209, 219 (1982).  The entire proceedings must be examined to determine

7    whether the prosecutor's remarks "so infected the trial with unfairness as to make

8    the resulting conviction a denial of due process."  Hall v. Whitley, 935 F.2d 164,

9    165 (9th Cir. 1991) (quoting Donnelley v. DeChristoforo, 416 U.S. 637, 643

10   (1974)).  Before granting relief, a federal court must also determine that any

11   constitutional error was not harmless.  Specifically, the court must find that any

12   error "had substantial and injurious effect or influence in determining the jury's

13   verdict."  Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) (quotation marks

14   omitted).

15       The first instance of prosecutorial misconduct did not infect Morgande's

16   trial in a manner that denied him due process.  "Improper argument does not, per

17   se, violate a defendant's constitutional rights."  Jeffries v. Blodgett, 5 F.3d 1180,

18   1191 (9th Cir. 1993).  A trial court may neutralize the prejudice from the

19   prosecutor's error by admonishing the jury or giving a curative instruction.  Here,

20   the jury was instructed to disregard the statement.  See e.g., United States v.

21   Lopez-Alvarez, 970 F.2d 583 (9th Cir. 1992) (finding that any prejudice which

22   may have resulted from a prosecutor's statements was neutralized by the trial

23   judge's instruction that lawyers' statements are not evidence).  Accordingly, the

24   first instance of misconduct did not affect Morgande's constitutional rights.

25       The second claimed instance of prosecutorial misconduct is not even

26   reviewable by this court because Morgande failed to make an objection in the trial

27

28                                           **19**

1  court to the prosecutor's statement, and the California appellate court found that

2  this failure caused Morgande to forfeit the claim.  Accordingly, any claim

3  regarding the second instance of misconduct is procedurally defaulted.  Cf. Rich v.

4  Calderon, 187 F.3d 1064, 1070 (9th Cir. 1999) (recognizing procedural default of

5  prosecutorial misconduct claims where petitioner failed to make contemporaneous

6  objections, and the state court invoked a procedural bar to the consideration of the

7  claims).

8          None of Morgande's remaining allegations of prosecutorial misconduct

9  provide any basis for habeas relief.  Much of the alleged misconduct was not

10 improper, and the California Court of Appeal's decision to that effect was not

11 unreasonable or contrary to any federal law.  For example, Morgande argues that

12 the prosecutor improperly "urged punishment in closing argument" by making the

13 following statement: "This case was proved virtually beyond all doubt this

14 defendant committed the crime.  And now it's time to pay."  But, as the California

15 Court of Appeal found, in the context of the closing argument it is clear that the

16 prosecutor meant that the jury should find Morgande guilty because of the proof of

17 guilt, and not that the prosecutor was urging punishment.  The prosecutor's

18 conduct was not improper.  The remaining allegations of misconduct are no more

19 meritorious.

20         Even assuming that there was some isolated arguable misconduct, none was

21 prejudicial.  The evidence of Morgande's guilt was very strong.  As the California

22 Court of Appeal explained, with respect to the comment concerning Nichols, "it

23 was not the prosecutor's comment that Shelisa [Nichols] would be of no help to

24 defendant that convicted him but physical evidence, corroborated by accomplice

25 testimony, and his own admissions."  Woods testified that Morgande decided to

26 kill Sims, and provided an explanation of Morgande's motive, namely, Sims's

27

28                                          **20**

1   failure to prevent Whitney from testifying against Morgande.  Woods's testimony

2   was corroborated by Whitney, and by Morgande's own admissions.  Physical

3   evidence corroborated Woods's description of the manner in which Morgande

4   committed the murder.  The physical evidence, showing that Sims was

5   asphyxiated, was also consistent with Woods's testimony that there was "a lot of

6   struggling and arguing in the backseat" and that Woods saw Morgande choke

7   Sims.  The discovery of Sims's body, from the water along Highway 37 and near a

8   pier, was consistent with Woods's testimony.  Morgande's link to the manner of

9   the disposal of Sims's body was also corroborated.  A police search of Morgande's

10  property revealed weight lifting equipment, including barbell plates, and fishing

11  gear.  The search also revealed pictures of Morgande posing with his pit bulls,

12  consistent with Wood's testimony that Morgande wrapped a dog chain around

13  Sims body before attaching a 50-pound barbell weight plate.  Furthermore,

14  Morgande's own admissions provided further corroboration.  The record in this

15  case does not demonstrate that the jury's decision was substantially influenced by

16  any prosecutorial errors, nor is there any "grave doubt" that any errors did not

17  affect the jury's verdict.  Hegler v. Borg, 50 F.3d 1472, 1478 (9th Cir. 1995)

18  (quoting O'Neal v. McAninch, 513 U.S. 432, 438 (1995)).

19              **2.    Alleged vouching.**

20       Morgande claims that the prosecutor improperly vouched for Woods's

21  credibility, first during voir dire, then during her direct examination, and finally

22  during the testimony of Detective McElligott.  The California Court of Appeal

23  determined not only that there was no contemporaneous objection made to

24  preserve the claim, but also that the claim had no merit.  Even if Morgande's claim

25  was not procedurally defaulted for his failure to make a contemporaneous

26  objection in the trial court, his claim does not entitle him to habeas relief.  The

27

28                                    **21**

1   California Court of Appeal's decision was not contrary to any federal law, and was

2   not an unreasonable determination of the facts.

3       During voir dire, the prosecutor referred to Woods as an accomplice, and

4   revealed that Woods was permitted to take a plea bargain.  The prosecutor asked

5   the prospective jurors if they would accept the testimony of someone who had

6   taken a plea agreement in exchange for testifying in another case.  As the

7   California Court of Appeal noted, it was neither misconduct nor vouching to ask

8   prospective jurors during voir dire whether they "would automatically reject the

9   testimony of someone who was guilty of murder but cut a deal for manslaughter."

10  Nor was it vouching to mistakenly refer to Woods as an accomplice during voir

11  dire.  Such references stopped after Morgande objected.

12      In addition, during Woods's direct examination, the prosecutor brought out

13  the existence of her plea bargain.  He also questioned Woods about her inconsistent

14  preliminary hearing testimony, and established that Woods lied under oath at that

15  time.  The questioning revealed why the witness was testifying at Morgande's trial.

16  This did not constitute vouching.  The California Court of Appeal correctly noted,

17  "the course of the examination concerning the plea bargain shows no more than a

18  fulfillment of the prosecutor's obligation to disclose to the jury any inducement

19  made to a prosecution witness to testify."

20      Detective McElligott testified that Woods's trial testimony was, for the most

21  part, consistent with her earlier police statements.  Morgande claims that this

22  constituted vouching for Woods's testimony.  As the California Court of Appeal

23  correctly found, "the questioning was not improper vouching but rehabilitation of

24  Woods with evidence of a prior consistent statement."

**3.   Allegedly coerced testimony from Woods, and presentation
        of the plea bargain to the jury.**

In November 2002, Woods was arrested and charged with Sims's murder.

**22**

1    In February 2003, the prosecution agreed to reduce the charge to manslaughter if

2    Woods agreed to provide "full and truthful" testimony in the case against

3    Morgande.  According to the terms of the agreement, Woods's "failure to provide

4    truthful testimony" would void the agreement and subject her to perjury charges.

5         Woods first testified at Morgande's preliminary hearing in June 2003.  She

6    recanted her police statement and denied that Morgande murdered Sims.  The

7    prosecutor rescinded the plea agreement and charged Woods with murder and

8    perjury.  In October 2003, after Woods admitted that she lied at the preliminary

9    hearing at the urging of Morgande, the prosecution entered into a new plea

10   agreement with Woods whereby Woods would plead guilty to manslaughter and

11   perjury in exchange for her "truthful testimony" in Morgande's case.  At

12   Morgande's trial, Woods testified against Morgande, in conformity with the

13   statements she made to the police.

14        Morgande argues that Woods's testimony was coerced, and the trial court

15   violated his due process rights by permitting the testimony.  Although Morgande

16   lacks standing to complain about infringements of Woods's constitutional rights,

17   he may be entitled to habeas relief if the trial court's admission of Morgande's

18   testimony rendered his trial so fundamentally unfair as to violate due process.

19   Williams v. Woodford, 384 F.3d 567, 593 (9th Cir. 2004) (citations omitted).  The

20   California Court of Appeal determined that Woods was not compelled to testify in

21   conformance with her police statement, and that the plea bargain only required

22   Woods to testify fully and truthfully.  Accordingly, the state court found,

23   Morgande was not denied a fair trial.

24        The state court's determination was not contrary to or an unreasonable

25   application of clearly established federal law, and not an unreasonable

26   determination of the facts.  The California Court of Appeal did not unreasonably

27

28                                        **23**

1  find that Woods's plea bargain was not coerced.  The terms of the plea agreement

2  only required that Woods testify truthfully.  Woods was represented by an attorney

3  throughout the proceedings in her case.  At trial, Woods testified about her

4  statements to the police and her recantation during the preliminary hearing, and

5  acknowledged that the plea bargain merely required her to testify truthfully.

6  Woods revealed the prosecutor's decision to rescind the original plea bargain, and

7  revealed that the prosecution charged her with murder and added a perjury count

8  after Woods's inconsistent testimony during the preliminary hearing.  The details

9  of Woods's plea bargain, and any potential coercion, were also subject to cross-

10  examination.  During cross-examination, Woods stated that she accepted the plea

11  offer because she "didn't have a choice," meaning that she had to take the deal to

12  testify truthfully against Morgande or she would be subject to prosecution for

13  murder.  There is no basis on which to find that the state court erred in determining

14  that Morgande's trial was not fundamentally unfair due to the admission of

15  Woods's testimony.

16       There is also no basis on which to find that the prosecutor misled the jury

17  regarding the terms of Woods's plea bargain.  As discussed above, Woods's

18  testimony was not coerced; she agreed to testify truthfully.  As the California

19  Court of Appeal correctly found, "If the police statement was the truth, then by

20  agreeing to testify truthfully she effectively agreed to testify in accord with that

21  statement."  The fact that she agreed to testify in conformity with her police

22  statement, does not mean, as Morgande argues, that she was coerced into providing

23  the testimony that she did.  The prosecutor engaged in no misconduct by arguing

24  that Woods's testimony was not coerced.

25       In light of the testimony and disclosure of the terms and circumstances of the

26  plea bargain, admission of Woods's statements did not render Morgande's trial

27

28                                            **24**

1   fundamentally unfair.  See Williams, 384 F.3d at 596 (finding no evidence that

2   petitioner's right to a fair trial was violated where witness who was beaten at the

3   city jail was subject to cross-examination about the coercion, therefore allowing

4   petitioner "to test the voluntariness and veracity" of the witness's testimony at

5   trial); United States v. Mattison, 437 F.2d 84, 85 (9th Cir. 1970) (finding no due

6   process violation where witness was previously interrogated illegally but was

7   subject to cross-examination at trial through which the jury could assess the

8   witness's credibility).

9       Accordingly, this claim is denied.

10      **V.    Admission of a similar offense.**

11      The prosecution argued that Morgande killed Sims because of Sims's failure

12  to dissuade Whitney from testifying against him.  To support this claim, the

13  prosecution presented the testimony of Woods, a police officer, and Whitney

14  regarding Morgande's San Diego assault on Whitney and Sims's threatening

15  contacts with Whitney.  Morgande alleges that his due process rights were violated

16  when the trial court admitted evidence of the prior assault to prove motive.

17      Morgande's claim fails because no federal right was violated.  State court

18  evidentiary rulings are not subject to federal habeas review unless there is a

19  violation of federal law, either by infringing on a specific federal constitutional or

20  statutory provision or by depriving the defendant of the fundamentally fair trial

21  guaranteed by due process.  Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995)

22  (citing Pulley v. Harris, 465 U.S. 37, 41 (1984)).  "Thus, a federal court cannot

23  disturb on due process grounds a state court's decision to admit prior bad acts

24  evidence unless the admission of the evidence was arbitrary or so prejudicial that it

25  rendered the trial fundamentally unfair."  Id. (citation omitted).

26      The admission of the prior assault in this case was not arbitrary or so

27

28                                      **25**

1   prejudicial that it rendered Morgande's trial fundamentally unfair.  The evidence

2   was relevant to prove motive and intent.  As the California Court of Appeal noted,

3   evidence of Morgande's assault on Whiteney was relevant to show Morgande's

4   motive for Sims's murder.  Evidence of Morgande's assault on Whitney, admitted

5   pursuant to the provision of the California Evidence Code permitting such

6   evidence, see Cal. Evid. Code § 1101(b), did not violate Morgande's federal rights.

7           **VI.    Ineffective assistance of counsel.**

8           Morgande's final claim is that his trial counsel rendered ineffective

9   assistance by (1) failing to introduce certain evidence at the Miranda hearing; (2)

10  failing to object to the prosecutor's alleged vouching; (3) failing to object to the

11  presentation of Nichols's statements; and (4) failing to object to the admission of

12  Morgande's prior assault on Whitney.

13          A claim of ineffective assistance of counsel is cognizable as a claim of

14  denial of the Sixth Amendment right to counsel, which guarantees not only

15  assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S.

16  668, 686 (1984).  To prevail on such a claim, a petitioner must establish (1) that

17  counsel's performance was so deficient that it fell below an "objective standard of

18  reasonableness" under prevailing professional norms, id. at 687-88, and (2) that

19  prejudice occurred as a result of counsel's deficient performance, meaning that

20  "there is a reasonable probability that, but for counsel's unprofessional errors, the

21  result of the proceeding would have been different," id. at 694.

22          Morgande's allegations of ineffective assistance do not warrant habeas relief

23  because he can show neither deficient performance nor prejudice.  Three of the

24  four alleged deficiencies relate to counsel's failure to object during trial.  However,

25  none of the instances cited by Morgande as requiring an objection warranted an

26  objection.  As discussed earlier, the prosecutor's examination of Woods did not

27

28                                          **26**

constitute vouching; Nichols's statements were properly admitted as adoptive

admissions of Morgande; and evidence of the assault on Whitney was relevant and

not unfairly prejudicial.  Counsel's failure to raise a meritless argument or to take a

futile action does not constitute ineffective assistance of counsel.  Rupe v. Wood,

93 F.3d 1434, 1444-45 (9th Cir. 1996).  Accordingly, counsel was not deficient in

failing to object.  Moreover, Morgande can show no prejudice because the trial

court would likely have overruled any objection that would have been made on

these points.

Morgande's fourth and final assignment of error to his trial counsel is

similarly unavailing.  Morgande claims that his trial counsel rendered ineffective

assistance by failing to more effectively present evidence, during the Miranda

hearing, that the police permitted him to speak with Nichols during his

interrogation.  Morgande apparently wishes to pursue the theory that he waived

counsel as part of a "deal" to see his wife.  There is no basis on which to find that

counsel ineffectively presented the evidence.  Morgande's trial counsel submitted

an affidavit stating that he presented this evidence at the Miranda hearing by

showing the videotape of the interrogation, which clearly showed that Morgande

was permitted to speak with Nichols during the interrogation.  Morgande cannot

overcome the "strong presumption that counsel's conduct [fell] within the wide

range of professionally competent assistance."  Strickland, 466 U.S. at 689.

Presentation of the videotape evidence in this case was within the range of

competent representation.  There is no suggestion of how counsel should or could

have presented it more effectively.

Furthermore, Morgande can show no prejudice.  As the California Court of

Appeal observed, the sequence of events during Morgande's interrogation

indicated there was no "deal" for Morgande to waive his right to counsel.  There is

1  no basis on which to find that the result of the trial court's ruling would have been

2  different if trial counsel had further highlighted the fact that police allowed

3  Morgande to speak with Nichols.

4      Accordingly, Morgande's ineffective assistance claims must be denied.

5                                    **CONCLUSION**

6      For the foregoing reasons, the petition is DENIED.

7

8  DATED:      August 13, 2009

9

10                                  /s/ *Mary M. Schroeder*

                                    MARY M. SCHROEDER,
11                                  United States Circuit Judge
                                    Sitting by designation
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    **28**